[Cite as *Snider Crossing L.L.C. v. Warren Cty. Bd. of Rev.*, 2025-Ohio-3189.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| SNIDER CROSSING LLC, | : | |
| Appellant, | : | CASE NO. CA2025-01-005 |
| | : | OPINION AND |
| - vs - | : | JUDGMENT ENTRY |
| | | 9/8/2025 |
| | : | |
| WARREN COUNTY BOARD | : | |
| OF REVISION, et al. | | |
| | : | |
| Appellees. | | |

APPEAL FROM THE OHIO BOARD OF TAX APPEALS
Case No. 2023-1195

Vorys, Sater, Seymour and Pease LLP, and Nicholas M. J. Ray and Lindsay D. Spillman, for appellant.

David P. Fornshell, Warren County Prosecuting Attorney, and Kathryn Horvath, Assistant Prosecuting Attorney, for appellees, Warren County Board of Revision and Warren County Auditor.

David C. DiMuzio, Inc., and Matthew C. DiMuzio and David C. DiMuzio, for appellee, Mason City Schools Board of Education.

David A. Yost, Ohio Attorney, General, for Appellee, Ohio Tax Commissioner.



**O P I N I O N**

**M. POWELL, J.**

{¶ 1} Snider Crossing LLC appeals from the Ohio Board of Tax Appeals ("BTA") decision increasing the 2022 tax-year valuation of real property that it owns. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} This case arises from a property tax valuation dispute that concerns the 2022 statutory amendments to Ohio's school district complaint filing requirements in R.C. 5715.19(A)(6). The case focuses on whether appellee Mason City School District, Board of Education ("BOE") properly established jurisdiction to challenge the assessed value of real property it neither owns nor leases and whether an entity transfer can satisfy the statutory prerequisites for such challenges.

{¶ 3} The subject property consists of four separate parcels located in Mason, Ohio, in Warren County. The property operates as a strip shopping center housing several commercial tenants. For tax year 2022, appellee Warren County Auditor ("Auditor") initially assessed the property's true total value at $2,878,020.

*The March 2021 Transaction*

{¶ 4} On March 2, 2021, approximately ten months before the relevant tax-lien date, the subject property was transferred through what the parties characterize as an entity sale or LLC transfer. The transaction was structured as a transfer of ownership interests in Snider Crossing rather than a direct conveyance of real estate. The purchase price was $3,742,500. No deed reflecting a change of ownership was recorded in public records. The Auditor's records continued to show Snider Crossing LLC as the titleholder from 2017 through the relevant tax period, with no indication of a transfer occurring on March 2, 2021. This absence from the public record reflects the nature of the entity

transfer structure, which accomplishes the equivalent of a real estate sale without requiring a traditional deed recordation.

{¶ 5} The transaction followed conventional real estate marketing practices. The property was marketed before the sale was completed. Both a listing broker and a buying broker participated in the transaction, and the parties were unrelated entities. The purchase contract, dated October 1, 2020, was specifically captioned as an agreement for the sale of real estate and identified the specific real property as the subject matter of the transaction. The final settlement statement, dated February 23, 2021, confirmed that only real estate was transferred, with no personal property or other business assets included in the deal.

*The 2022 Statutory Amendments*

{¶ 6} In 2022, the General Assembly made fundamental changes to Ohio's property tax complaint system. Through H.B. 126, effective July 21, 2022, the legislature made school district valuation challenges more difficult. Before these amendments, boards of education enjoyed virtually unrestricted authority to file complaints challenging property valuations for any reason, assuming they followed basic procedural requirements.

{¶ 7} The amendments to R.C. 5715.19(A)(6) changed this, establishing what courts have described as severe restrictions on school district participation in property tax proceedings. The new provision begins with an express prohibition: "The legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant shall not file an original complaint with respect to property the subdivision or complainant does not own or lease unless both of the following conditions are met." For complaints based on recent sales, these conditions require that the property was "(i) sold in an arm's length transaction, as described in section 5713.03 of the Revised Code,

before, but not after, the tax lien date for the tax year for which the complaint is to be filed," and that "(ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section." R.C. 5715.19(A)(6)(a). For tax year 2022, that threshold was $500,000.

*The Board of Education's Complaint and Snider Crossing's Jurisdictional Challenge*

{¶ 8} Against this statutory backdrop, the BOE filed an original complaint with appellee Warren County Board of Revision ("BOR") on March 15, 2023, seeking to increase the property's assessed value from $2,878,020 to $3,750,000 for tax year 2022. The complaint explicitly premised this requested increase on the March 2, 2021 sale of the subject property. The BOE attached a printout from CoStar, a subscription-based but publicly available database of real estate transactions, to the complaint that documented the transaction details, including confirmation that the sale occurred in March 2021, that both listing and buying brokers were involved, and that the "true buyer" and "true seller" were different individuals.

{¶ 9} The BOE's complaint allegations, if true, would clearly satisfy amended R.C. 5715.19(A)(6)'s requirements. The alleged sale price of $3,750,000 exceeded the Auditor's assessment of $2,878,020 by $871,980, representing both more than ten percent of the assessed value and more than the required $500,000 filing threshold.

{¶ 10} Snider Crossing filed a motion to dismiss the BOE's complaint on jurisdictional grounds, asserting that the BOE had failed to establish the statutory requirements and that entity transfers do not qualify as sales under the amended statute. This motion established the central legal questions that would dominate the subsequent proceedings: whether the BOE must conclusively prove jurisdictional compliance at the outset of BOR proceedings, what quantum of evidence suffices for such proof, and

whether entity transfers can constitute qualifying sales under the cross-referenced R.C. 5713.03.

*The Board of Revision Proceedings*

{¶ 11}The BOR conducted a hearing on July 13, 2023, to address both the jurisdictional motion and the substantive valuation issues. At the hearing, Snider Crossing presented no witnesses or other evidence, relying solely on legal arguments regarding jurisdiction. The BOE, by contrast, presented evidence supporting both the existence of the qualifying sale and its impact on property valuation.

{¶ 12}The BOE's evidence included professional real estate appraiser James Burt's testimony and written appraisal report. Burt opined that the subject property's true value was $3,800,000 as of January 1, 2022. His written report stated that the March 2021 transfer "appears to be an arms-length sale." Burt testified that he had researched the transaction through multiple sources, including CoStar records and public mortgage filings, and that another appraiser in his office had independently verified the sale through conversations with one of the involved brokers. Burt verified the sale in September 2021 and began using it as a comparable in appraisals of other properties shortly thereafter. Burt noted that amount was reported in CoStar records as $3,750,000, instead of the $3,742,500 purchase price, which he explained was a nominal variance typical in such databases.

{¶ 13}As to the valuation of the property, Burt testified that his appraisal methodology followed conventional practices for commercial property valuation. He first used a sales-comparison analysis, which yielded a total rounded value of $3,750,000. Burt then used an income analysis to reach a value of $3,810,000. He ultimately reconciled to a final valuation of $3,800,000.

{¶ 14}The BOR denied Snider Crossing's motion to dismiss and issued a decision

- 5 -

on July 17, 2023, increasing the property's value to $3,750,000. The BOR made no specific findings in its recorded or written decision regarding whether the BOE had established compliance with the jurisdictional standing requirements of R.C. 5715.19(A)(6).

*The Board of Tax Appeals Proceedings*

{¶ 15} Snider Crossing appealed the BOR's decision to the BTA and renewed its jurisdictional challenge by filing a motion to remand. The motion argued that the BOE had failed to meet jurisdictional standing requirements and that the case should be remanded to the BOR with instructions to dismiss for lack of jurisdiction.

{¶ 16} In December 2023, the BTA issued an order denying the motion to remand, relying on established case law regarding jurisdictional proof in tax proceedings. The BTA determined that complainants are not required to establish jurisdictional facts at the time of filing but rather may prove compliance with statutory prerequisites through the ordinary course of administrative proceedings. This decision forced Snider Crossing to proceed with discovery and document production.

{¶ 17} The case proceeded to a merit hearing before the BTA on June 5, 2024. The evidentiary record developed during these proceedings provided definitive resolution of the factual questions that had dominated the earlier stages. The BOE submitted the actual purchase contract dated October 1, 2020, and the settlement statement dated February 23, 2021, establishing conclusively that the entity transfer occurred for $3,742,500. Both documents were produced by Snider Crossing during discovery.

{¶ 18} Burt provided updated testimony based on his revised appraisal report dated March 15, 2024. Having reviewed the purchase contract and settlement statement, Burt confirmed that these documents showed a sale of the subject property through an entity transfer. He again testified that he had personally verified the sale in September

2021 and that another individual in his office had also verified the transaction independently. Burt's revised appraisal reached the same value conclusion as his original report. While the appraisals contained some differences in detail and analysis, both supported the conclusion that the March 2021 transaction provided reliable evidence of the property's market value.

{¶ 19}Snider Crossing offered no evidence of valuation at the BTA hearing, continuing to focus its arguments solely on jurisdictional issues. Snider Crossing objected to the introduction of the purchase contract and settlement statement on grounds that Burt had no personal involvement in the transaction, but these objections were overruled.

*The Board of Tax Appeal's Decision*

{¶ 20}On December 17, 2024, the BTA issued a decision rejecting Snider Crossing's jurisdictional arguments and addressing the substantive valuation issues. The BTA concluded that the BOE had properly established jurisdiction under R.C. 5715.19(A)(6) and that the March 2021 entity transfer constituted a qualifying sale under the statute's cross-referenced R.C. 5713.03. On the merits, the BTA determined that the sale provided the best evidence of the property's true value and set the assessed value at $3,742,500, the actual transaction price.

{¶ 21}The decision synthesized the evidentiary record developed through both BOR and BTA proceedings, finding that the purchase contract and settlement statement provided conclusive proof of the transaction's terms and that Burt's verification efforts demonstrated the sale's arm's length character. The BTA rejected Snider Crossing's arguments that entity transfers categorically cannot qualify as sales under the amended statute and that the BOE's preliminary evidence at the BOR level was insufficient to establish jurisdiction.

{¶ 22}Snider Crossing appealed.

- 7 -

## II. ANALYSIS

{¶ 23} Snider Crossing presents five assignments of error challenging various aspects of the BTA's jurisdictional and substantive determinations. These assignments of error challenge the framework for establishing jurisdiction under amended R.C. 5715.19(A)(6), the sufficiency of evidence presented at different procedural stages, the qualification of entity transfers as sales, and the propriety of the BTA's case-management decisions.

### A. When and How Jurisdiction May Be Established

{¶ 24} Snider Crossing's first assignment of error alleges:

THE BTA ERRED IN FINDING THAT THE BOE WAS NOT REQUIRED TO ESTABLISH THAT IT MET THE EXCEPTIONS TO THE STATUTORY PROHIBITION ON FILING A COMPLAINT PURSUANT TO R.C. 5715.19(A)(6), EITHER AT THE TIME OF FILING OR AT THE HEARING BEFORE THE WARREN COUNTY BOARD OF REVISION.

{¶ 25} This assignment of error challenges the framework for how jurisdictional prerequisites operate under amended R.C. 5715.19(A)(6). The question is whether a complainant must conclusively prove compliance with R.C. 5715.19(A)(6)'s conditions at the outset of proceedings, or whether it may establish jurisdiction through the ordinary course of administrative review.

{¶ 26} "We must affirm a BTA decision that is reasonable and lawful." *Rover Pipeline, L.L.C. v. Harris*, 2025-Ohio-2806, ¶ 27, citing R.C. 5717.04. We review the BTA's legal conclusions de novo. *Id*. "[B]ut issues relating to the credibility of witnesses and the weighing of the evidence are subject to abuse-of-discretion review." *Id*.

{¶ 27} "The BOR is a creature of statute," possessing only the jurisdiction the General Assembly has conferred. *Kohl's Illinois, Inc. v. Marion Cty. Bd. of Revision*, 2014-Ohio-4353, ¶ 23. "A county board of revision's jurisdiction to hear and rule on complaints

- 8 -

is defined by statute." (Citation omitted.) *Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2013-Ohio-4627, ¶ 9. Our task is to determine what that statutory definition requires. "This is a question of statutory interpretation. As with any question of statutory interpretation, our primary objective is to ascertain and give effect to the legislature's intent." (Citation omitted.) *Marysville Exempted Village School Bd. of Edn. v. Union Cty. Bd. of Revision*, 2024-Ohio-3323, ¶ 13.

**1. The 2022 Amendments to R.C. 5715.19(A)(6)**

{¶ 28} The amendments to R.C. 5715.19(A)(6) significantly restrict the authority of school districts to challenge property valuations, establishing what one court described as "severe restrictions on the participation of boards of education in seeking ad valorem real property tax proceedings." *Olentangy Local School Dist. Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 2024-Ohio-1564, ¶ 15 (5th Dist.).

{¶ 29} Amended R.C. 5715.19(A)(6) begins with a prohibition: "The legislative authority of a subdivision, the mayor of a municipal corporation, or a third party complainant shall not file an original complaint with respect to property the subdivision or complainant does not own or lease unless both of the following conditions are met." For complaints based on recent sales, the property must have been "(i) sold in an arm's length transaction, as described in section 5713.03 of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to be filed," and "(ii) the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section." For tax year 2022, that threshold was $500,000.

{¶ 30} These are substantive restrictions defining when a school board may file a complaint. But the statute does not prescribe how or when compliance with these restrictions must be demonstrated. The General Assembly changed the substantive

standards for filing while leaving the procedural machinery intact. It included no requirement for immediate proof of jurisdictional facts, no provision limiting when supporting evidence may be presented, and no restriction on the BTA's authority to consider jurisdictional questions de novo. Had the legislature intended to change established precedent on how jurisdictional prerequisites operate in tax proceedings, we think it would have said so explicitly. *See Clark v. Scarpelli*, 91 Ohio St.3d 271, 278, 2001-Ohio-39 ("It is presumed that the General Assembly is fully aware of any prior judicial interpretation of an existing statute when enacting an amendment.").

### 2. Snider Crossing's Bifurcated Theory

{¶ 31}Snider Crossing advances a novel theory of jurisdictional administration. Under this view, the amendments to R.C. 5715.19(A)(6) created a rigid two-stage process: first, the BOR must make threshold jurisdictional determinations based solely on evidence presented at that level; second, only if jurisdiction is conclusively established may the case proceed to substantive review. Any evidentiary inadequacy at the BOR level, Snider Crossing contends, creates an incurable jurisdictional defect mandating dismissal.

{¶ 32}But this theory finds no support in the statutory text. R.C. 5715.19(A)(6) contains no language requiring immediate proof of jurisdictional facts or limiting the venues for establishing compliance. The statute uses the language of prohibition and exception, not the language of procedure and proof. It states what facts must exist for jurisdiction, not when or how those facts must be demonstrated.

### 3. What Existing Law Requires

{¶ 33}The Ohio Supreme Court has consistently distinguished between the existence of jurisdictional facts and the timing of their proof. In *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2009-Ohio-5932, the Court confronted similar

jurisdictional prerequisites under the second-filing prohibition in R.C. 5715.19(A)(2), which prohibits filing a second valuation complaint unless at least one of four statutory exceptions applies. The Court noted that "the school board complied with the language of R.C. 5715.19(A)(2) by indicating on the complaint that the first of the four exceptions applied." *Worthington* at ¶ 19. The Court did not require contemporaneous proof but rather proper allegation followed by opportunity to produce evidentiary support.

{¶ 34} The Court's subsequent decision in *Glyptis v. Cuyahoga Cty. Bd. of Revision*, 2018-Ohio-1437, reinforces this understanding. There, the Court affirmed the BTA's finding that complainants "'properly alleged one of the four circumstances set forth in R.C. 5715.19(A)(2) on the face of the complaint and offered sufficient evidence to show that [the complaint] qualified for the exception.'" *Glyptis* at ¶ 7 (quoting the BTA decision). Importantly, the Court approved the BTA's reliance on evidence presented at both the BOR hearing and the BTA hearing to establish the exception. *See id.* at ¶ 4, ¶ 5. Thus evidence presented to the BTA, not just the BOR, established jurisdiction.

{¶ 35} Snider Crossing attempts to distinguish these precedents as pre-amendment decisions, but this misses the point. The statutory structure remains the same: a general prohibition with specific exceptions that must be satisfied for jurisdiction to exist. The 2022 amendments changed which exceptions apply to school districts, not how compliance with those exceptions may be demonstrated.

{¶ 36} Snider Crossing places great weight on *Soyko Kulchystsky, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 2014-Ohio-4511, arguing it mandates contemporaneous proof of jurisdiction. But *Soyko* addresses a different question entirely. The Ohio Supreme Court said that "compliance [with R.C. 5715.19(A)(2)] should be determined as of the time of filing," meaning the circumstances at the time of filing were dispositive as to that statutory prohibition. *Id.* at ¶ 31. This addresses a temporal question: whether

jurisdictional facts must exist when the complaint is filed. It does not address an evidentiary question: when those facts must be proven.

{¶ 37} The distinction matters. A sale that occurred before the tax lien date either happened or it did not; the sale price either exceeded the statutory thresholds or it did not. These are objective facts that existed, or did not exist, at the moment of filing. Whether a complainant can immediately prove these facts through admissible evidence is an entirely different question. *Soyko* answered the first question, not the second.

{¶ 38} As the BTA correctly explained in its decision, this principle means "the Board must consider whether, at the time the complaint was filed, the property had been the subject of an arm's-length sale before the tax lien date and the sale price was at least $500,000 and 10% above the Auditor's value." The inquiry focuses on historical fact, not contemporaneous proof.

{¶ 39} The Ohio Supreme Court's decision in *Diley Ridge Med. Ctr. v. Fairfield Cty. Bd. of Revision*, 2014-Ohio-5030, provides guidance on how jurisdictional requirements interact with procedural fairness. In that case, when the BTA dismissed a complaint for lack of standing without allowing the complainant to present evidence, the Court reversed. The complainant, the Court held, "ought to have been accorded the opportunity *both* to assert *and* to prove the basis for its standing to maintain the complaint." (Emphasis sic.) *Diley* at ¶ 24.

{¶ 40} This principle applies with equal force here. The filing restrictions in R.C. 5715.19(A)(6) operate as standing requirements that must be satisfied for jurisdiction to exist. And, as *Diley* teaches, complainants must have meaningful opportunity to demonstrate their right to relief.

{¶ 41} Snider Crossing's proposed framework would create an anomalous procedural framework. Under its theory, any evidentiary deficiency at the BOR level would

constitute an incurable jurisdictional defect. This approach would transform every procedural inadequacy into a substantive barrier to relief, creating an unnecessarily harsh standard inconsistent with the remedial purposes of the tax appeal system. The BOR, an informal body designed for accessible dispute resolution, would become a court of first and last resort on complex jurisdictional questions.

{¶ 42} Moreover, Snider Crossing's framework would create significant practical difficulties. Different BOR panels might apply varying evidentiary standards to jurisdictional questions, creating inconsistent results for similarly situated complainants. The existing framework, by contrast, provides uniform review through the BTA's de novo jurisdiction and ensures consistent application of legal standards.

### 4. Application to the Present Case

{¶ 43} Here, the BOE's complaint alleged that the subject property was sold on March 2, 2021, for $3,750,000, which exceeded the Auditor's valuation by more than the statutorily required percentages and dollar amounts. These allegations, if true, would satisfy R.C. 5715.19(A)(6)(a). The subsequent proceedings established their truth through the purchase contract, settlement statement, and appraisal testimony.

{¶ 44} The BOE properly invoked jurisdiction by alleging facts that, if proven, would satisfy the statutory requirements. The administrative process then tested those allegations through discovery and hearings. The evidence ultimately confirmed them. Jurisdiction existed because the facts existed, not because they were proven at any particular moment.

{¶ 45} Snider Crossing complains that this approach gives school districts a "free pass" on jurisdictional requirements. But school districts must still prove the jurisdictional facts; they simply need not do so at the earliest possible moment or in the least convenient forum. The requirements remain stringent. Only the timeline for proof maintains

appropriate flexibility.

**5. Conclusion**

{¶ 46} The BTA correctly interpreted R.C. 5715.19(A)(6) as creating substantive filing restrictions while preserving procedural flexibility for proving compliance. This interpretation accords with the statutory text and follows established precedent. The General Assembly changed substantive requirements but chose not to upend established procedural practice. We will not read into the statute restrictions the legislature chose not to include.

{¶ 47} The first assignment of error is overruled.

**B. Sufficiency of Evidence Establishing a Sale**

{¶ 48} The second assignment of error alleges:

> THE BTA ERRED BY NOT ORDERING THE DISMISSAL OF THE BOE'S COMPLAINT BECAUSE THE BOE FAILED TO PRESENT COMPETENT EVIDENCE TO ESTABLISH THE SALE AT THE BOR HEARING.

{¶ 49} This assignment of error challenges the evidentiary sufficiency of the BOE's jurisdictional showing specifically at the BOR level. While Snider Crossing's argument here shares common ground with the first assignment of error's jurisdictional-framework argument, it presents a distinct question about the evidence that must be presented to establish compliance with R.C. 5715.19(A)(6).

{¶ 50} Our analysis of the first assignment of error established the controlling legal framework: R.C. 5715.19(A)(6) creates substantive restrictions on when school districts may file valuation complaints while preserving the established procedural mechanisms for proving compliance with those restrictions. The statute requires that jurisdictional facts exist at the time of filing, but it does not mandate that those facts be conclusively proven at that time or at any particular stage of the administrative process. Under this framework,

- 14 -

the BOE bore the burden of properly alleging jurisdictional facts in its complaint and ultimately establishing those facts through the administrative process. The timing and venue for that proof, however, remained subject to the ordinary operation of administrative procedure rather than the rigid bifurcated approach Snider Crossing advocates.

{¶ 51} Snider Crossing's argument here directly contradicts our framework by insisting that evidentiary inadequacies at the BOR level mandate dismissal regardless of subsequent proof. This approach would effectively require immediate and conclusive jurisdictional determinations at the informal BOR level, precisely the result we already rejected.

{¶ 52} Snider Crossing's argument also misconceives the role and function of BOR proceedings within the administrative tax system. The BOR operates as an informal administrative body designed to provide accessible dispute resolution for property tax matters. As the BOE correctly observed, "proceedings before a board of revision 'are not governed by the Rules of Evidence.'" *Remington Clean Fill LLC v. Milford Exempted Village Schools Bd. of Edn.*, 2021-Ohio-3779, ¶ 16 (12th Dist.), quoting *Dayton Supply & Tool Co. v. Montgomery Cty. Bd. of Revision*, 2006-Ohio-5852, ¶ 24.

{¶ 53} The administrative structure contemplates that more complex evidentiary questions will receive attention at the appellate level, where the BTA exercises de novo jurisdiction. *See Key Serv. Corp. v. Zaino*, 2002-Ohio-1488. The BTA has statutory authority to conduct comprehensive administrative appeals. *Id*. During these appeals, parties may present additional evidence beyond what the BOR originally reviewed. *Id*. The BTA can also conduct its own investigation to gather more facts and reach conclusions that are independent of the BOR's findings. *Id. See* R.C. 5717.02(E). Under R.C. 5717.03, the BTA has the power to modify existing orders based on these

independent determinations. R.C. 5717.02(E) gives the BTA authority to hear appeals based solely on the existing record and evidence but, if any interested party requests it, the BTA must allow additional evidence to be presented.

{¶ 54} Snider Crossing's characterization of the BOR evidence as wholly inadequate does not withstand scrutiny. The record establishes that the BOE presented multiple forms of evidence supporting its jurisdictional allegations. The BOE's evidence included appraiser James Burt's written report stating that the March 2021 transfer "appears to be an arms-length sale," Burt's testimony that he had knowledge of the sale and that "another appraiser in his office had confirmed its validity through conversations with one of the brokers involved in the transaction," and a CoStar printout documenting the transaction details.

{¶ 55} While Snider Crossing focuses on the tentative language in Burt's written report, this critique misses the broader evidentiary picture. Burt testified that he had researched the transaction through multiple sources and that the sale had been independently verified by another professional in his office. The CoStar documentation provided additional corroboration of the transaction's basic parameters, including the involvement of both listing and buying brokers and the arms-length character of the deal.

{¶ 56} More fundamentally, Snider Crossing's critique conflates the preliminary showing required for jurisdictional purposes with the ultimate burden of proof on the merits. The proper inquiry is not whether the BOR evidence would satisfy formal evidentiary standards for ultimate resolution of the merits, but whether it provided adequate foundation for the BOE's jurisdictional allegations, pending further development through the administrative process. Under our analysis of the first assignment of error, complainants who properly allege jurisdictional facts may proceed if those facts are ultimately substantiated, regardless of the initial quality of proof.

{¶ 57} The evidence before the BOR clearly supported the BOE's jurisdictional allegations, that the property was sold on March 2, 2021, for a price exceeding the statutory thresholds. Burt's professional verification of the transaction, combined with the CoStar documentation, provided a reasonable foundation for these allegations even if it would not constitute definitive proof for ultimate resolution of the case.

{¶ 58} The administrative process ultimately vindicated the BOE's jurisdictional allegations through the presentation of definitive documentary evidence. The purchase contract and settlement statement obtained through discovery provided conclusive proof of the March 2021 transaction and its terms. This evidence confirmed that the jurisdictional prerequisites existed at the time of filing and that the BOE's original allegations were factually accurate. Under our framework from the first assignment of error, this proof established jurisdiction regardless of any preliminary evidentiary limitations. Because the key question was whether the jurisdictional facts existed when the complaint was filed, not whether those facts were immediately provable through admissible evidence at the BOR level.

{¶ 59} Snider Crossing argues that Burt's appraisal testimony constituted inadmissible hearsay that could not support jurisdictional findings. This argument mischaracterizes both the nature of Burt's testimony and the standards governing preliminary jurisdictional determinations. When Burt testified about his investigation and verification of the March 2021 transaction, he was providing factual testimony about his professional activities rather than offering inadmissible hearsay about third-party statements.

{¶ 60} Moreover, even accepting Snider Crossing's evidentiary characterizations, the BOR was not required to adhere to the hearsay rule under the rules of evidence. *See HealthSouth Corp. v. Testa*, 2012-Ohio-1871, ¶ 13 (stating that "[t]he rules of evidence,

including the hearsay rule, do not control administrative hearings"). The BOR's role is to make preliminary determinations based on available information, with the understanding that more formal evidentiary development will occur if the case proceeds to the BTA level. We note too the Ohio Supreme Court's observation that "an expert appraiser must at times rely on hearsay evidence to perform his or her job. 'Some hearsay evidence necessarily is always involved with expert testimony. To become an expert, one must read and learn from sources which are necessarily outside the evidence at trial. It is this knowledge obtained from outside sources which qualifies a witness as an expert.'" *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2018-Ohio-2046, ¶ 37, quoting *Worthington City Schools v. ABCO Insulation*, 84 Ohio App.3d 144, 152 (10th Dist. 1992).

{¶ 61} Snider Crossing's citation to BTA decisions rejecting CoStar printouts in other contexts does not support its position here. Those decisions addressed ultimate burdens of proof on the merits in cases where complainants relied exclusively on unauthenticated database printouts. Here, by contrast, the CoStar information was authenticated by expert testimony and supplemented by additional evidence of the appraiser's independent verification efforts.

{¶ 62} The BTA reasonably and lawfully determined that the BOE had presented adequate evidence to survive preliminary jurisdictional challenge. The decision to deny Snider Crossing's motion to dismiss and permit the case to proceed to discovery and hearings was entirely consistent with established principles of administrative law that favor resolution on the merits rather than dismissal on technical procedural grounds.

{¶ 63} Having established in our analysis of the first assignment that jurisdictional compliance may be demonstrated through the entirety of the administrative process, the adequacy of evidence presented specifically at the BOR level becomes legally irrelevant to the ultimate jurisdictional determination. The BTA's access to comprehensive evidence

establishing the March 2021 transaction provides the appropriate foundation for its jurisdictional conclusion, regardless of any preliminary evidentiary limitations.

{¶ 64} The second assignment of error is overruled.

### C. Evidence of Sale Price Thresholds

{¶ 65} The third assignment of error alleges:

> THE BTA ERRED BY NOT ORDERING THE DISMISSAL OF THE BOE'S COMPLAINT BECAUSE IT FAILED TO ESTABLISH WITH ADMISSIBLE EVIDENCE BEFORE THE BOR THAT THE ALLEGED TRANSACTION HAD A SALE PRICE THAT MET THE $500,000 AND 10% THRESHOLDS REQUIRED BY R.C. 5715.19(A)(6)(A)(ii).

{¶ 66} Snider Crossing's third assignment of error advances a challenge to the sufficiency of evidence establishing the price threshold requirements of R.C. 5715.19(A)(6)(a)(ii). Unlike the broader jurisdictional framework questions addressed in the first two assignments of error, this assignment of error focuses specifically on whether appraisal testimony can establish sale prices for jurisdictional purposes.

{¶ 67} The framework established in our review of the first assignment of error governs the third assignment of error's price-threshold challenge. R.C. 5715.19(A)(6)(a)(ii) requires that "the sale price exceeds the true value of the property appearing on the tax list for that tax year by both ten per cent and the amount of the filing threshold determined under division (J) of this section," which for tax year 2022 was $500,000. The critical inquiry is whether the BTA had sufficient evidence to determine that these requirements were satisfied at the time of filing, not whether that evidence was conclusively presented at any particular procedural stage.

{¶ 68} Snider Crossing argues that "an opinion of value in an appraisal report is not evidence of a sale price, and it is a sale price that must be established." This distinction draws an artificial line between appraisal testimony about transaction details

and documentary evidence of those same details. The argument fails because it mischaracterizes both the nature of Burt's testimony and the ultimate evidentiary foundation for the BTA's price threshold determination.

{¶ 69} When appraiser James Burt testified about the March 2021 transaction, he was not offering subjective opinions about property value but reporting factual information about a documented real estate sale. As Burt testified at the BTA hearing, he had "personally verified the sale in September 2021" and had obtained specific transaction details including the purchase price of $3,742,500. This testimony constituted factual reporting about historical events, not the type of opinion evidence Snider Crossing describes. Moreover, Snider Crossing's characterization ignores the distinction between preliminary proof and ultimate evidence. Even accepting that Burt's BOR testimony alone might have been insufficient for final jurisdictional determination, the BTA proceedings produced definitive documentary evidence that mooted any preliminary evidentiary concerns.

{¶ 70} The record establishes beyond dispute that the price threshold requirements were satisfied. The property's assessed value for tax year 2022 was $2,878,020. The purchase contract and settlement statement, authenticated and admitted into evidence at the BTA hearing, demonstrate that the property sold for $3,742,500 in March 2021. This sale price exceeded the assessed value by $864,480, representing both more than ten percent of the assessed value and more than the required $500,000 filing threshold. These documents provide conclusive evidence that the jurisdictional prerequisites existed at the time the BOE filed its complaint in March 2023. The sale occurred well before the relevant tax lien date and exceeded the statutory thresholds by substantial margins. This documentary evidence establishes jurisdiction regardless of any preliminary evidentiary limitations at the BOR level.

{¶ 71} The subsequent presentation of primary documentary evidence through discovery validated the BOE's original allegations and demonstrated that its complaint was not speculative but was grounded in verifiable facts about a documented real estate transaction. This ultimate confirmation of the jurisdictional facts establishes the propriety of the BTA's decision to proceed with substantive review.

{¶ 72} The BTA possessed adequate evidence to determine that the price threshold requirements of R.C. 5715.19(A)(6)(a)(ii) were satisfied at the time of filing.

{¶ 73} The third assignment of error is overruled.

### D. Entity Transfer as "Sale"

{¶ 74} The fourth assignment of error alleges:

> THE BTA ERRED IN FINDING THAT ANY FORM OF TRANSFER IS A SALE THAT WOULD ESTABLISH JURISDICTION UNDER R.C. 5715.19(A)(6). THE ALLEGED TRANSFER THE BOE RELIES UPON DOES NOT MEET THE REQUIREMENTS IN R.C. 5715.19(A)(6)(A)(i) AND R.C. 5713.03.

{¶ 75} This assignment of error presents a question of statutory interpretation: whether the March 2021 entity transfer constitutes a qualifying "sale" under the jurisdictional requirements of R.C. 5715.19(A)(6). The question requires us to construe the meaning of "sold in an arm's length transaction, as described in section 5713.03 of the Revised Code" and to determine whether entity transfers can satisfy this requirement.

{¶ 76} R.C. 5715.19(A)(6)(a)(i) requires that property was "sold in an arm's length transaction, as described in section 5713.03 of the Revised Code, before, but not after, the tax lien date for the tax year for which the complaint is to be filed." This explicit cross-reference to R.C. 5713.03 indicates that the General Assembly intended to incorporate the established framework that governs valuation determinations throughout the property tax system. Had the legislature intended to exclude entity transfers from the scope of

qualifying sales, it could have done so explicitly. By incorporating the R.C. 5713.03 framework, the legislature showed an intent to maintain the established understanding.

{¶ 77} The Ohio Supreme Court's decision in *Columbus City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2020-Ohio-353, ("*Palmer House*") provides definitive guidance on the central question here. In *Palmer House*, the Court addressed whether the sale of corporate ownership interests constituted a sale of real estate for purposes of applying the sale-price presumption under R.C. 5713.03. The Court's analysis began with the identical statutory language that governs here: the requirement for "'an arm's length sale between a willing seller and a willing buyer within a reasonable length of time.'" *Id.* at ¶ 28, quoting R.C. 5713.03.

{¶ 78} The Court rejected the categorical approach that Snider Crossing advocates in this case. Specifically, the Court rejected "an iron rule that the sale of an entity may never, for purposes of invoking the sale-price presumption, be viewed as equivalent to a sale of the entity's real-estate asset." *Id.* at ¶ 36. Instead, the Court adopted a functional approach that examines the substance of each transaction to determine whether it constitutes an arm's length sale of real estate. *Id.* at ¶ 38-39. This determination represented a finding that the jurisdictional prerequisites for treating the transaction as a sale under R.C. 5713.03 had been satisfied.

{¶ 79} Snider Crossing attempts to characterize *Palmer House* as merely holding that entity transfers are "like" sales for valuation purposes, rather than constituting actual sales under R.C. 5713.03. This reading misreads the Court's holding and analysis. The Court did not create a separate category of "sale-like" transactions with different legal effects. Instead, the Court determined that the specific entity transfer at issue satisfied the statutory definition of a qualifying sale because the evidence demonstrated that the parties intended to effectuate a real estate transaction.

{¶ 80} The Court's analysis focused on several key factors that distinguished the *Palmer House* transaction from earlier cases where entity transfers had been found insufficient. The purchase agreement was "labeled by the parties as 'Sale of Palmer House'" and "Purchase and Sale Agreement." *Palmer House*, 2020-Ohio-353, at ¶ 38. More importantly, "the contract takes the classic form of a purchase agreement for commercial real estate by identifying as the subject matter of the transaction the specific real property along with categories of personal property appurtenant to the commercial operation of the real estate." *Id.* The contract also "includes an explicit provision setting forth an optional method for consummating the deal as a transfer of corporate ownership rather than a conveyance of real estate from the seller to the buyer." *Id.*

{¶ 81} Based on this evidence, the Court concluded that "the documentation in this case made it reasonable for the BTA to find that this sale . . . reflected the parties' intent to sell and purchase income-producing real estate and supported the BTA's finding that the parties' transfer of corporate ownership constituted a contrivance for accomplishing the sale of commercial real estate." *Id.* at ¶ 39.

{¶ 82} Snider Crossing relies heavily on earlier Supreme Court decisions in *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 82 Ohio St.3d 193 (1998), and *Gahanna-Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 89 Ohio St.3d 450 (2000), to support its position that entity transfers categorically cannot constitute sales under R.C. 5713.03. This reliance is misplaced.

{¶ 83} In *Palmer House*, the Court specifically addressed and distinguished these earlier decisions. The Court explained that in *Salem Med. Arts* and *Gahanna-Jefferson*, "the purchase contracts provided for sales of corporate shares or partnership interests without explicit reference to an intent to sell and buy the real estate itself." *Palmer House*, 2020-Ohio-353, at ¶ 37. Those cases involved pure business acquisitions where the

- 23 -

purchasers acquired entity interests without any indication that they intended to acquire the underlying real estate. The Court emphasized that the factual distinction was dispositive: "In stark contrast, the BTA in this case confronted a document labeled by the parties as 'Sale of Palmer House . . .' and 'Purchase and Sale Agreement.'" *Id.* at ¶ 38. The Court's analysis makes clear that the legal standard focuses on the parties' intent and the substance of their transaction, not on the formal structure they choose to accomplish their objectives.

{¶ 84} Snider Crossing's argument that the General Assembly intended to exclude entity transfers from the scope of qualifying sales lacks support in the statutory text. The BTA correctly noted that the General Assembly was fully aware of the *Palmer House* decision when it enacted the 2022 amendments to R.C. 5715.19(A)(6). Despite this knowledge, the legislature chose not to exclude entity transfers from the definition of qualifying sales.

{¶ 85} When the legislature enacts amendments against the backdrop of existing judicial interpretations and chooses not to override those interpretations, it demonstrates approval of the judicial approach. *See Clark*, 91 Ohio St.3d at 278 ("It is presumed that the General Assembly is fully aware of any prior judicial interpretation of an existing statute when enacting an amendment."). The General Assembly's decision to reference R.C. 5713.03 without limitation, combined with its failure to exclude entity transfers despite clear opportunities to do so, confirms that such transactions remain within the scope of qualifying sales.

{¶ 86} The record here establishes that the March 2021 transaction possesses all the characteristics that the Supreme Court identified as supporting a finding of a qualifying sale in *Palmer House*. The purchase contract was specifically captioned as an agreement for the sale of real estate and identified "the specific real property" as the subject matter

of the transaction. The contract contained "an explicit provision setting forth an optional method for consummating the transaction as a transfer of corporate ownership rather than a direct conveyance of real estate."

{¶ 87} The evidence supports the BTA's finding that this was an arm's length transaction between unrelated parties who were represented by real estate brokers. The property was marketed for sale before the transaction was completed. The settlement statement confirmed that only real estate was transferred, with no personal property or other business assets included in the transaction.

{¶ 88} This evidence supports the conclusion that the entity transfer constituted what the *Palmer House* Court described as "a contrivance for accomplishing the sale of commercial real estate" rather than a business acquisition. *Palmer House*, 2020-Ohio-353, at ¶ 39. Snider Crossing's approach focuses on form over substance. The arm's length transaction requirement in R.C. 5713.03 is designed to identify transactions that reflect true market conditions and genuine negotiations between unrelated parties. When an entity transfer accomplishes the economic equivalent of a real estate sale under arm's length conditions, the statutory purposes are fully served regardless of the formal structure employed.

{¶ 89} The BTA reasonably and lawfully determined that the March 2021 entity transfer constituted a qualifying sale under R.C. 5715.19(A)(6)(a)(i) and R.C. 5713.03. This determination follows established precedent, applies well-settled principles of statutory construction, and rests on adequate factual findings supported by the record.

{¶ 90} The fourth assignment of error is overruled.

### E. Case-Management Decisions

{¶ 91} The fifth assignment of error alleges:

THE BTA ERRED BY NOT DISMISSING THE APPEAL FOR

A LACK OF JURISDICTION. BY PERMITTING THE CASE TO PROCEED FORWARD WITH DISCOVERY AND TO A MERIT HEARING WHEN THE BOR AND THE BTA'S JURISDICTION IS IN ISSUE, THE BTA'S ORDER IRREPARABLY HARMED APPELLANT'S RIGHTS BY DISCLOSURE OF NON-PUBLIC INFORMATION.

{¶ 92} Snider Crossing's final assignment of error presents a two-pronged attack on the BTA's procedural management of this case. First, it contends that the BTA should have dismissed the entire proceeding for lack of jurisdiction rather than allowing development through discovery and hearings. Second, Snider Crossing alleges that permitting the case to proceed while jurisdictional questions remained unresolved caused irreparable harm through compelled disclosure of confidential business information.

{¶ 93} Snider Crossing's argument for jurisdictional dismissal has been rendered entirely moot by our resolution of the first four assignments of error, determining that the BTA correctly interpreted R.C. 5715.19(A)(6) as permitting jurisdictional development through ordinary administrative procedures and concluding that the BOE ultimately established all requisite jurisdictional facts.

{¶ 94} Snider Crossing's assertion of procedural harm through compelled disclosure lacks both factual foundation and legal merit. The record demonstrates that the BOE discovered the March 2021 transaction through its own investigation rather than through formal discovery processes directed at Snider Crossing. As the Auditor and BOR observe in their brief, "it did not take a formal discovery order or the filing of a formal complaint for the BOE to discover the sale of the property. The BOE located that information on its own, forming the basis of its complaint against valuation and the basis of jurisdiction for the BOE to file such a complaint."

{¶ 95} This factual reality undermines Snider Crossing's entire harm theory. The BOE based its jurisdictional allegations on information it had already obtained through

public sources and professional channels, not on confidential data extracted through compulsory process. The appraiser James Burt testified that he verified the sale "in September 2021" and began using it as a comparable in other appraisals thereafter, indicating that transaction details were available through professional networks well before any formal discovery commenced.

{¶ 96} More fundamentally, Snider Crossing fails to identify any specific procedural harm or to demonstrate that it was denied adequate protective mechanisms during the administrative proceedings. The BOE correctly notes in its brief that "during the discovery phase, Appellant could have filed a motion for a protective order seeking to limit the discovery given to the School District. Appellant filed no such motion." This failure to pursue available procedural safeguards constitutes a clear waiver of any objection to the scope or burden of discovery.

{¶ 97} Even accepting Snider Crossing's characterization of the discovery process, its harm claim fails because it identifies no cognizable legal injury flowing from the BTA's procedural decisions. The information ultimately disclosed through discovery consisted primarily of standard commercial real estate transaction documents that evidenced a sale Snider Crossing does not seriously dispute occurred. The purchase contract and settlement statement represent the type of business records that property owners routinely produce in tax valuation proceedings.

{¶ 98} Moreover, the record suggests that much of the relevant information was already available through public or semi-public sources. The transaction was documented in CoStar records, mortgage filings were made in public records, and professional appraisers had verified the sale details well before any formal discovery commenced. Snider Crossing's claim of harm through disclosure of "non-public information" does not rest on concrete injury from inappropriate revelation of sensitive data.

{¶ 99} We see no error in the BTA's management of this case.

{¶ 100} The fifth assignment of error is overruled.

### III. CONCLUSION

{¶ 101} We have overruled each of the assignments of error presented. Therefore the BTA's decision is affirmed.

BYRNE, P.J., and PIPER, J., concur.

---

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Ohio Board of Tax Appeals for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Mike Powell, Judge